# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **Commodigy OG Vegas Holdings LLC,** | Case No. 1:19cv1382 |
| Plaintiff, | |
| -vs- | JUDGE PAMELA A. BARKER |
| **ADM Labs, et al.,** | |
| Defendants | Memorandum Opinion & Order |

Currently pending is Defendants' Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). (Doc. No. 6.) Plaintiff Commodigy OG Vegas Holdings LLC filed a Brief in Opposition on July 29, 2019. (Doc. No. 10.) Defendant responded on August 12, 2019. (Doc. No. 12.) For the following reasons, Defendants' Motion (Doc. No. 6) is GRANTED IN PART and DENIED IN PART as follows.

## I. Background

### A. Factual Allegations in the Complaint

Plaintiff is an Ohio corporation that purchases hemp to make cannabidiol ("CBD"). (Doc. No. 1-2 ¶¶ 1, 7.) Plaintiff names fifteen defendants,[1] all of which are or were associated with ADM—a Colorado concern that sells industrial hemp. (Doc. No. 1-2 ¶¶ 2, 9.)

On January 26, 2019, ADM provided a certificate of analysis to Plaintiff for a batch of hemp that Plaintiff was interested in buying. (Doc. No. 1-2 ¶ 10.) The certificate indicated that the batch contained 10.32% CBD. (*Id.*) Defendant Motiwalla had electronically signed the certificate. (*Id.*)

---

[1] The fifteen defendants comprise ADM Group and ADM Labs (collectively, "ADM")—a Colorado concern that sells industrial hemp. (Doc. No. 1-2 ¶¶ 2, 9.) The remaining defendants are "principals/partners of ADM and are residents of Colorado": Arman Motiwalla, Jake Shortino, Colin Davis, and John Does 1-10. (Doc. No. 1-2 ¶ 3.)

Upon receipt of this certificate, Plaintiff negotiated with Defendants to purchase 13,500 pounds of the hemp represented by the certificate at a price of $540,000. (Doc. No. 1-2 ¶ 11.) On February 19, 2019, Defendants provided an invoice for the sale to Plaintiff at Plaintiff's Ohio location. (Doc. No. 1-2 ¶ 12.) The invoice stated, *inter alia*, that "Seller warrants that the Product will conform substantially to the previously provided [certificate of analysis] provided with the sale of a given Lot [of hemp]." (*Id.*)

Later that day, Plaintiff issued a "Hemp Sales Order Form" to Defendants. (Doc. No. 1-2 ¶ 14.) The form referenced Defendants' invoice number and contained additional terms for the deal, such as "packaging and shipping requirements." (*Id.*)

Two days later on February 21, 2019, Defendant Adwalla electronically signed Plaintiff's form as "'Chief Executive Officer' of 'ADM Labs.'" (*Id.*)

Plaintiff then paid Defendants $540,000, and Defendants shipped the hemp to Plaintiff's hemp processor in Las Vegas, Nevada. (Doc. No. 1-2 ¶¶ 15-16.)

On March 12, 2019, Plaintiff's processor sent three samples of the hemp to an independent laboratory to be tested. (Doc. No. 1-2 ¶ 17.) "Instead of coming back 10.32 % CBD as warranted by Defendants, the results came back 3.726%, 4.519%, 4.664% CBD, respectively." (*Id.*)

Plaintiff notified Defendants of the hemp's deficiency. (Doc. No. 1-2 ¶ 18.) Defendants responded that they would investigate and remedy the problem. (*Id.*) However, they did not cure the deficiency. (*Id.*)

### B. Procedural History

On June 14, 2019, Plaintiff sued Defendants in the Court of Common Pleas of Cuyahoga County, Ohio, bringing three claims: breach of contract, unjust enrichment, and fraud. (Doc. No. 1-

2 ¶¶ 19-33.)  Plaintiff seeks damages for the full contract amount, $540,000.  (Doc. No. 1-2 ¶¶ 25, 28, 33.)

On June 14, 2019, Defendants removed the action to this Court.  (Doc. No. 1.)  Defendants then moved to dismiss the case for lack of jurisdiction and failure to state a claim.  (Doc. No. 6.)  Plaintiff filed an opposition.  (Doc. No. 10.)  Defendants replied.  (Doc. No. 12.)

## II. Motion to Dismiss

Defendants' Motion to Dismiss is now before the Court.  For clarity, the Court addresses Defendants' Motion based on its primary arguments: (1) lack of personal jurisdiction and (2) failure to state a claim upon which relief can be granted.

### A. Lack of Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) provides for dismissal when a court lacks personal jurisdiction over a defendant.  District courts have discretion to decide Rule 12(b)(2) motions on the pleadings alone, after permitting discovery in aid of deciding the motion, or after conducting an evidentiary hearing to resolve any apparent factual questions.  *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *Serras v. First Term. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)).

Plaintiff bears the burden of establishing personal jurisdiction.  *Estate of Thomson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 360 (6th Cir. 2008) (citing *Brunner v. Hampson*, 441 F.3d 457, 462 (6th Cir. 2006)).  Where a Rule 12(b)(2) motion is decided solely on written submissions, the plaintiff's burden is "relatively slight"; the court must view all of the pleadings and affidavits in a light most favorable to the plaintiff, and to defeat dismissal, the plaintiff need only make a *prima facie* showing that personal jurisdiction exists.  *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169

(6th Cir. 1988); *Shaker Constr. Grp. LLC, v. Schilling*, No. 1:08-cv-278, 2008 WL 4346777, at *1 (S.D. Ohio Sept. 18, 2008). A court disposing of a Rule 12(b)(2) motion "does not weigh the controverting assertions of the party seeking dismissal." *Theunissen*, 935 F.2d at 1459. This approach "prevent[s] non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts." *Id.*

Federal courts apply the law of the forum state when deciding whether personal jurisdiction exists over a defendant. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996). Accordingly, to find personal jurisdiction over Defendants in this case, the Court must determine (1) whether Defendants' actions meet the criteria of Ohio's long-arm statute, Ohio Rev. Code Ann. § 2307.382, and (2) whether the Court's jurisdictional exercise comports with the due process requirements of the United States Constitution. *CompuServe, Inc.*, 89 F.3d at 1262.

### 1. Ohio's Long-Arm Statute Confers Personal Jurisdiction Over Defendants.

Plaintiff argues that Ohio's long-arm statute, Ohio Rev. Code Ann. § 2307.382(A), grants this Court personal jurisdiction over Defendants under subsections (1)-(3) and (6). (Doc. No. 1-2 ¶ 2; Doc. No. 10 at 19.). The statute provides, in relevant part:

> (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
> (1) Transacting any business in this state;
> (2) Contracting to supply services or goods in this state;
> (3) Causing tortious injury by an act or omission in this state;
> . . .
> (6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state;

The Court first considers subsection (1)—whether Plaintiff has sufficiently alleged that Defendants "transacted any business" in Ohio. Ohio Rev. Code Ann. § 2307.382(A)(1). As the Ohio

4

Supreme Court has explained, the term "transact" in this context means "to prosecute negotiations; to carry on business; to have dealings." *Ky. Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 559 N.E. 2d 477, 480 (Ohio 1990) (emphasis omitted) (quoting *Black's Law Dictionary* 1341 (5th ed. 1979)).

Plaintiff alleges various facts indicating that Defendants "transact[ed] . . . business" in Ohio:

- Before and after the contract, Defendants sent emails to Plaintiff that were received in Ohio. (Doc. No. 10-5 ¶¶ 6-11, 13-14, 16.)

- Defendants sent sample hemp to Ohio for Plaintiff's inspection prior to the contract. (Doc. No. 10-7.)

- Defendants sent its original contract offer, the invoice, to Ohio via email. (Doc. No. 10-2.)

- The Hemp Sales Order Form, deemed the final contract by Plaintiff, originated in Ohio. (Doc. No. 10-3; Doc. No. 10-5 ¶ 19.)

- Defendants received money from the Ohio Plaintiff via wire transfer from Civista bank in Ohio. (Doc. No. 10-5 ¶ 20.)

- Defendants received multiple rolls of industrial hemp supply plastic bags from Plaintiff's Ohio warehouse. (Doc. No. 10-5 ¶ 12.)

- Defendants communicated with Plaintiff via an Ohio phone number. (Doc. No. 10-5 ¶ 24.)

In response, Defendants argue that they have not transacted any business in Ohio. The argument, in its entirety, is as follows:

> Defendants do not conduct any business in the State of Ohio. (AM Aff. ¶12, JS Aff. ¶11, CD Aff. ¶11). As described, Plaintiff initiated the transaction by contacting ADM Labs. (JS Aff. ¶4).

5

(Doc. No. 6-1 at 12.) Defendants' conclusory argument wholly fails to account for the facts described above.

This Court concludes that it has personal jurisdiction over Defendants. The broad statutory language—"[t]ransacting any business"—encompasses the Parties' negotiations described above. Ohio Rev. Code Ann. § 2307.382(A)(1); *see Ky. Oaks Mall Co.*, 559 N.E. 2d at 480. Because the Court finds personal jurisdiction under § 2307.382(A)(1), no further analysis on the rest of the potential applicable sections of § 2307.382(A) is necessary.

### 2. Exercising Personal Jurisdiction Over Defendants Would Not Violate Defendants' Due Process Rights Under the Fourteenth Amendment.

Having found that jurisdiction may be exercised under Ohio's long-arm statute, the Court now conducts the constitutional inquiry.

"There are two kinds of personal jurisdiction within the Due Process inquiry: (1) general personal jurisdiction, where the suit does not arise from defendant's contacts with the forum state; and (2) specific jurisdiction, where the suit does arise from the defendant's contacts with the forum state." *Conn*, 667 F.3d at 713. However, the Sixth Circuit has concluded that Ohio law does not recognize general jurisdiction over non-resident defendants. *Id.* at 717. The Court must therefore find specific jurisdiction over the Defendants.

A finding of specific jurisdiction comprises three elements, all of which must be satisfied:

First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable.

*Id.* at 713.

A defendant purposefully avails himself of the laws of the forum state "when the defendant's contacts with the forum state proximately result from actions by the defendant himself that create a substantial connection with the forum State, and when the defendant's conduct and connection with the forum are such that he should reasonably anticipate being haled into court there." *CompuServe*, 89 F.3d at 1263 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985)) (internal quotations omitted). A defendant does not need to have a physical presence in the forum state for personal jurisdiction to attach. *Id.* at 1264. When a defendant's actions are purposefully directed towards residents of the forum state, the defendant can be considered to be transacting business in that state. *Id.* (quoting *Mohasco*, 401 F.2d at 382); *see also Mohasco*, 401 F.2d at 382 (finding mail solicitation, radio broadcasts, and magazine distributions within the forum state amounted to transacting business within the state). The proper focus of the inquiry into purposeful availment is on the "*quality* rather than the *quantity* of the contacts." *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722 (6th Cir. 2000).

Several Sixth Circuit cases illustrate what constitutes purposeful availment.[2] For example, contracts with residents of the forum state are sufficient to establish personal jurisdiction over an out-of-state defendant so long as the totality of that business "represents something more than random, fortuitous, or attenuated contacts with the state." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 891 (6th Cir. 2002) (quoting *Burger King*, 471 U.S. at 475 (1985) (internal quotations marks omitted)); *see also Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998) ("If . . . a nonresident defendant transacts business by negotiating and executing a contract via telephone calls and letters to an Ohio

---

[2] Notably, at least one unpublished Sixth Circuit opinion concludes that "the Ohio 'transacting any business' standard is coextensive with the purposeful availment prong of constitutional analysis." *Burnshire Development, LLC v. Cliffs Reduced Iron Corp.*, 198 F. App'x 425, 432 (6th Cir. 2006).

resident, then the defendant has purposefully availed himself of the forum by creating a continuing obligation in Ohio."). Even if the residents of the forum state were the ones to approach a defendant for business, mailing to residents of the state or accepting payment from residents of the state may be enough to establish personal jurisdiction. *Neogen*, 282 F.3d at 892.

For specific jurisdiction to attach under the second *Mohasco* factor, "the cause of action must arise from the defendant's activities" in the forum state. *Mohasco*, 401 F.2d at 381. "To meet this requirement, a plaintiff must establish at least a 'causal connection' between a defendant's activities in the forum state and the harm to the plaintiff." *Opportunity Fund, LLC, v. Epitome Sys., Inc.*, 912 F. Supp. 2d 531, 540 (S.D. Ohio 2012) (quoting *Neogen*, 282 F.3d at 892). "If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts." *CompuServe*, 89 F.3d at 1267 (citing *Reynolds*, 23 F.3d 1116-17).

Finally, the Court must consider whether exercising personal jurisdiction over Defendants would "comport with traditional notions of fair play and substantial justice." *Id.* at 1267-68 (quoting *Reynolds*, 23 F.3d at 1117). If the Court has found that the first two requirements of the *Mohasco* test are met, "an inference arises that this third factor is also present." *Id.* at 1268 (citing *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1170 (6th Cir. 1988)). When deciding this element of the *Mohasco* test, the Court must consider "the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies." *Id.* (quoting *Am. Greetings*, 839 F.2d at 1169-70).

Here, construing the facts in Plaintiff's favor, the Court finds that the Due Process clause allows for jurisdiction over ADM. For the first prong, ADM purposely availed itself of the laws of Ohio due to the manner in which it affirmatively negotiated and formed a contract with the Ohio Plaintiff. Through these negotiations, ADM sent to Ohio emails, texts, a contract offer, and hemp samples. (Doc. No. 10-2; Doc. No. 10-5 ¶¶ 6-11, 13-14, 16; 10-7.) ADM agreed to a contract that originated in Ohio. (Doc. No. 10-3; Doc. No. 10-5 ¶ 19.) ADM then received (1) payment from an Ohio bank and (2) multiple rolls of industrial hemp supply plastic bags from Plaintiff's Ohio warehouse. (Doc. No. 10-5 ¶¶ 12, 20.) These contacts with Ohio were purposeful rather than "purely fortuitous." *International Technologies Consultants v. Euroglas*, 107 F.3d 386, 395 (6th Cir. 1997).

Defendants repeatedly argue that they never owned property in Ohio, they never substantially travelled to Ohio, they never advertised in Ohio, they only communicated with Defendants from afar, and that the contract hemp never reached Ohio. (Doc. No. 6-1 at 8-9, 12-13, 16, 18, 20.) It is true that there is a paucity of tangible, physical evidence in Ohio; however, the Sixth Circuit has observed "the confluence of the 'increasing nationalization of commerce' and 'modern transportation and communication,' and the resulting relaxation of the limits that the Due Process Clause imposes on courts' jurisdiction." *Compuserve*, 89 F.3d at 1262 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 293 (1980)).

Defendants cite several cases that they contend support their position,[3] including *Calphalon*, 228 F.3d 718.[4] Calphalon, an Ohio corporation, filed a federal lawsuit against a Minnesota resident

---

[3] (*See* Doc. No. 6-1 at 18-19 (citing, *e.g., Third Natl. Bank in Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087 (6th Cir. 1989); *Filtrexx International, LLC v. Truelsen*, No. 5:12-cv-58, 2013 U.S. Dist. LEXIS 19536 (N.D. Ohio Feb. 13, 2012).) Defendants' reliance on these cases does not change the Court's decision.

(Jerry Rowlette) in Ohio, seeking a declaration that it had lawfully terminated a contract between the parties. *Calphalon,* 228 F.3d at 720-21. Prior to the lawsuit, Mr. Rowlette had been an exclusive representative for Calphalon in Minnesota, Iowa, North Dakota, South Dakota, and Nebraska. *Id* at 720. The parties' business relationship had lasted for seventeen years, and within the last two years, they had executed a manufacturer's representative agreement that contained an Ohio choice of law provision. *Id* at 720-21. Mr. Rowlette had twice visited Ohio, once for a mandatory sales meeting and once to accompany a client on a tour of Calphalon's facilities. *Id* at 720. After being notified by Calphalon that it did not intend to renew the parties' agreement, Mr. Rowlette sent a demand letter to Calphalon notifying it of claims for breach of contract and unpaid commissions. *Id.* at 720-21. Calphalon's declaratory judgment action followed. *Id.* at 721.

A divided Sixth Circuit panel held that the federal district court in Ohio did not have personal jurisdiction over Mr. Rowlette. *Id.* at 724. In reaching this conclusion, the majority explained that the "mere existence of a contract" is "insufficient to confer personal jurisdiction," *id.* at 722, and that Mr. Rowlette's contacts with Ohio "were precisely the type of 'random,' 'fortuitous,' and 'attenuated' contacts that the purposeful availment requirement is meant to prevent from causing jurisdiction," *id.* at 723.

Several courts in this circuit have noted that a broad reading of *Calphalon* conflicts with Supreme Court precedent in *Burger King,* 471 U.S. at 473. *See Functional Pathways of Tennessee, LLC v. Wilson Senior Care, Inc.*, 866 F. Supp. 2d 918, 925 (E.D. Tenn. 2012) (collecting cases). As one district court has explained in attempting to reconcile the two cases:

> If there is a distinction to be made between the critical facts in *Calphalon* and *Burger King,* it perhaps can be derived from the absence of any activity by Rowlette himself directed into the forum state. For all that can be determined from the opinion in that case, it appears that Rowlette simply arranged sales in other states and reported on

10

> market conditions there. He never remitted payment for any goods to Calphalon's headquarters, nor did he 'reach out beyond' Minnesota for the purpose of deriving the benefit of affiliating with a 'nationwide organization,' as did John Rudzewicz in the *Burger King* case. Moreover, the lawsuit in that case was a declaratory judgment action in which Calphalon sought a ruling that it owed nothing to Rowlette, not that Rowlette had damaged Calphalon.

*Frankenmuth Mut. Ins. Co. v. Appalachian Underwriters, Inc.*, No. 03–10193–BC, 2004 WL 1406121, at *9 (E.D. Mich. June 21, 2004) (citing *Burger King,* 471 U.S. at 479-80); *see Light Source, Inc. v. Display Dynamics, Inc.*, No. 09–14268, 2010 WL 2351489, at *6 (E.D. Mich. June 8, 2010) (adopting the reasoning of *Frankenmuth*, 2004 WL 1406121, at *9); *see also Martichuski v. Wu*, No. 3:14-CV-292-TAV-CCS, 2015 WL 4877532, at *6 (E.D. Tenn. Aug. 14, 2015). The Court agrees with this narrow reading of *Caphalon*.

In any event, ADM's contacts with Ohio involved much more than the "mere existence of a contract." *Calphalon,* 228 F.3d at 722. Based on the *prima facie* facts, ADM directed activity into Ohio by communicating with and sending hemp samples to Plaintiff for the purpose of initiating and sustaining a continuous business relationship there, which carried with it mutual obligations for performance within the state. *See Tharo Sys., Inc. v. Cab Produkttechnik GMBH & Co. KG,* 196 F. App'x 366, 370 (6th Cir. 2006) ("[W]hen a nonresident defendant transacts business by negotiating and executing a contract via telephone calls and letters to an Ohio resident, then the defendant has purposefully availed himself of the forum by creating a continuing obligation in Ohio." (citations omitted) (internal quotation marks omitted)). Therefore, *Calphalon* does not control the outcome of this case.

Plaintiff has satisfied its burden under the second prong as well. The claims arise from ADM's contract with Plaintiff, and the contract created the obligations that Plaintiff alleges ADM has violated.

11

Finally, Plaintiff has satisfied the third prong. Because the first two elements of the *Mohasco* test have been met, there is an inference that ADM has a substantial connection with Ohio. *CompuServe*, 89 F.3d at 1268. Exercising personal jurisdiction over ADM comports with traditional notions of fair play and substantial justice. Though it may be burdensome for ADM to defend a suit in Ohio, when it entered into the relevant contract with Ohio residents it knew that it "was making a connection with Ohio, and presumably [it] hoped that connection would work to [its] benefit." *Id.*

While determining whether the Court has jurisdiction over the business entities to a contract is generally straightforward, the question of whether the Court has personal jurisdiction over the individuals who run those entities, or conduct business on the entities' behalf, is a bit murkier. Here, however, the negotiation of the business agreements with Plaintiff indicates that the individual Defendants—Arman Motiwalla, Jake Shortino, Colin Davis, and John Does 1-10—availed themselves of the laws of Ohio; the fraud claims against the individual Defendants arise from their negotiation of those agreements and their obligations under those agreements; and, because the first two *Mohasco* elements have been met, there is an inference that the individual Defendants have a substantial connection with Ohio. *CompuServe*, 89 F.3d at 1268.

Exercising personal jurisdiction over the individual Defendants comports with traditional notions of fair play and substantial justice. Though it may be burdensome for them to defend a suit in Ohio, through entering into the relevant contract with Ohio residents, they knew that they were "making a connection with Ohio, and presumably [they] hoped that connection would work to [their] benefit." *Id.*

Defendants argue that the Court does not have jurisdiction over the individual Defendants—Arman Motiwalla, Jake Shortino, Colin Davis, and John Does 1-10—because at all times they "were solely acting in their capacity as employees/representatives of ADM Labs." (Doc. No. 6-1 at 20.) This argument is based on the "fiduciary shield doctrine." The fiduciary shield doctrine prevents individual officers of a corporation from being subject to personal jurisdiction in the forum state merely because the corporation is subject to such jurisdiction. *Balance Dynamics Corp. v. Schmitt Indus., Inc.*, 204 F.3d 683, 698 (6th Cir. 2000) (quoting *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 929 (6th Cir. 1974)). However, the fiduciary shield doctrine is not absolute:

> The mere fact that the actions connecting defendants to the state were undertaken in an official rather than personal capacity does not preclude the exercise of personal jurisdiction over those defendants. Hence, where an out-of-state agent is actively and personally involved in the conduct giving rise to the claim, the exercise of personal jurisdiction should depend on traditional notions of fair play and substantial justice; *i.e.*, whether [the out-of-state agent] purposely availed herself of the forum and the reasonably foreseeable consequences of that availment.

*Balance*, 204 F.3d at 698 (internal citations omitted). When an individual defendant engages in solicitation and negotiations that give rise to a "continuing obligation," that defendant is *not* protected by the fiduciary shield doctrine and is subject to personal jurisdiction in the forum state. *Walker v. Concoby*, 79 F. Supp. 2d 827, 833 (N.D. Ohio 1999). Furthermore, when a plaintiff alleges an individual defendant "was personally involved with the alleged torts, including fraud, in the course of his employment," that defendant is not protected by the fiduciary shield doctrine and is subject to personal jurisdiction in the forum state. *Champion Food Serv., LLC, v. Vista Food Exch.*, No. 1:13-cv-01195, 2013 WL 4046410, at *4 (N.D. Ohio Aug. 7, 2013). Thus, no individual Defendant is protected by the fiduciary shield doctrine in this case.

Accordingly, and for all the reasons set forth above, Defendants' Motion to Dismiss Plaintiff's claims for lack of jurisdiction is without merit and denied.

### B. Failure to State a Claim

Under Federal Rule of Civil Procedure 12(b)(6), the Court accepts the plaintiff's factual allegations as true and construes the Complaint in the light most favorable to the plaintiff. *See Gunasekara v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). In order to survive a motion to dismiss under this Rule, "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).

The measure of a Rule 12(b)(6) challenge—whether the Complaint raises a right to relief above the speculative level—"does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. National Collegiate Athletic Ass'n.*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555-56). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific

facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Gunasekera*, 551 F.3d at 466 (internal quotations omitted). Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal,* 556 U.S. at 679.

### 1. Plaintiff Fails to State Claims Against the Individual Defendants Because They Are Not Parties to the Agreement Between ADM and Plaintiff.

Defendants argue that the contract claims against the individual Defendants—Arman Motiwalla, Jake Shortino, Colin Davis, and John Does 1-10—should be dismissed because they were not parties to the contract at issue; only ADM was. (Doc. No. 6-1 at 20-22.) Plaintiff counters that the individual Defendants are liable because, in the hemp-contract negotiations, they did not adhere to the corporate formalities. (Doc. No. 10 at 20-22.) For example, Defendants omitted the LLC designation from certain communications with Plaintiff, and Defendant Motiwalla signed a communication as "Managing Partner" of ADM. (Doc. No. 10-5 at 10.) Plaintiff argues that these actions render ADM a partnership rather than an LLC, and the individual Defendants are therefore on the hook for ADM's liabilities. (Doc. No. 6-1 at 20-22.)

To determine whether Plaintiff is correct that the corporate veil should be pierced, the Court applies Ohio law. *Corrigan v. United States Steel Corp.*, 478 F.3d 718, 723 (6th Cir. 2007) (stating that when the success of a state-law claim brought in federal court under diversity jurisdiction is dependent on piercing the corporate veil, this question of substantive law is governed by the law of the state in which the federal court sits); *Taylor Steel, Inc. v. Keeton,* 417 F.3d 598, 604 (6th Cir. 2005) (same). Under Ohio law, owners of a limited liability entity, such as a corporation or limited liability company ("LLC"), are not personally liable for the debts or obligations of the entity unless

they agree to be personally liable. *See* Ohio Rev. Code Ann. § 1705.48(B); *see also Belvedere Condo. Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 617 N.E. 2d 1075, 1085 (Ohio 1993) ("A fundamental rule of corporate law is that, normally, shareholders, officers, and directors are not liable for the debts of the corporation."). However, the Ohio Supreme Court has held that courts may disregard the corporate form and individual officers or shareholders may be liable if:

> 1) control over the corporation by those to be held liable was so complete that the corporation had no separate mind, will, or existence of its own, 2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and 3) injury or unjust loss resulted to the plaintiff from such control and wrong.

*Id.*

When applying *Belvedere*'s first prong to LLCs—whether an LLC is merely an "alter-ego" of its members[5]—Ohio courts consider various factors:

> (1) grossly inadequate capitalization, (2) failure to observe corporate formalities, (3) insolvency of the debtor corporation at the time the debt is incurred, (4) shareholders holding themselves out as personally liable for certain corporate obligations, (5) diversion of funds or other property of the company property for personal use, (6) absence of corporate records, and (7) the fact that the corporation was a mere facade for the operations of the dominant shareholder(s).

*LeRoux's Billyle Supper Club v. Ma*, 602 N.E. 2d 685, 689 (Ohio Ct. App. 6th Dist. 1991).

In 2016, Ohio abrogated by statute the use of the second factor—the failure to observe corporate formalities—in determining whether courts should pierce the corporate veil of an LLC. Specifically, Ohio Rev. Code Ann. § 1705.48(C) states:

> The failure of a limited liability company or any of its members, managers, or officers to observe any formalities relating to the exercise of the limited liability company's

---

[5] *Premier Therapy, LLC v. Childs*, 75 N.E.3d 692, 710 (Ohio Ct. App. 7th Dist. 2016) (applying *Belvedere*'s first prong to determine whether "piercing the corporate veil" is warranted because "it would be unjust to allow the [members] to hide behind the fiction of the corporate entity" when, in reality, the LLC is merely an "alter-ego" of the members themselves).

16

> powers or the management of its activities is not a factor to consider in, or a ground for, imposing liability on the members, managers, or officers for the debts, obligations, or other liabilities of the company.

Ohio Rev. Code Ann. § 1705.48(c).

Having reviewed the Complaint, the Court finds that Plaintiff fails to allege facts sufficient to state claims against the individual Defendants under an alter-ego theory of liability. Plaintiff alleges that ADM's corporate veil should be pierced because its officers omitted the LLC designation in certain communications. (*See* Doc. No. 1-2 ¶¶ 5, 10, 14, 21, 27.) However, as provided in Ohio Revised Code § 1705.48(C), this alleged omission is insufficient to pierce the corporate veil. Moreover, Defendant Motiwalla's reference to himself as ADM's "Managing Partner" in one instance is insufficient to pierce the veil. (*See* Doc. No. 1-2 ¶ 10.)

Accordingly, and for all the reasons set forth above, Defendants' Motion to Dismiss Plaintiff's breach of contract claims as set forth in Count I of the Complaint against the individual Defendants—Arman Motiwalla, Jake Shortino, Colin Davis, and John Does 1-10—is granted for Plaintiff's failure to state a claim.

### 2. Plaintiff States Unjust Enrichment Claims Against All Defendants.

Defendants argue that the unjust enrichment claims should be dismissed. (Doc. No. 6-1 at 24.) Specifically, Defendants state that, under Ohio law, a plaintiff cannot sustain an unjust enrichment claim where there is an express contract covering the same subject matter, and, here, there is an express contract. (Doc. No. 6-1 at 24.) Plaintiff's counterargument is twofold. First, Plaintiff says that the unjust enrichment claims are merely an alternative theory of liability if not all Defendants are found to be party to the contract. (Doc. No. 10 at 27.) Second, "even if all Defendants are properly

parties to a written contract, unjust enrichment will still lie when there is evidence of a fraud." (Doc. No. 10 at 28.)

Defendants are correct in that Ohio law does not *typically* permit a claim for unjust enrichment when there exists an express contract between the parties on the subject matter at issue. (Doc. No. 6-1 at 24 (citing *Wolfe v. Continental Cas. Co.*, 647 F.2d 705, 710 (6th Cir. 1981)). However, a claim for "unjust enrichment may be pled in the alternative when the existence of an express contract is in dispute, . . . and may be maintained despite the existence of an express contract where there is evidence of fraud, bad faith, or illegality." *Resource Title Agency, Inc. v. Morreale Real Estate Servs., Inc.*, 314 F. Supp. 2d 763, 772 (N.D. Ohio 2004) (citations omitted); *see also Barnes v. First American Title Ins. Co.*, No. 1:06CV574, 2006 WL 2265553, at *10 (N.D. Ohio Aug. 8, 2006) (finding that the plaintiff satisfied the pleading requirement through, *inter alia*, "averments of fraud" and noting that "Ohio law clearly supports pleading in the alternative, permitting Plaintiffs to plead both breach of contract and unjust enrichment claims, though they may not prevail on both").

Here, Plaintiff has plead its unjust enrichment claims in the alternative (Doc. No. 1-2 ¶¶ 26-28), and it has alleged fraud on the part of Defendants (Doc. No. 1-2 ¶¶ 29-33). Therefore, Plaintiff's unjust enrichment claims against all Defendants survive the Motion to Dismiss.

Accordingly, and for all the reasons set forth above, Defendants' Motion to Dismiss Plaintiff's unjust enrichment claims as set forth in Count II of the Complaint is without merit and denied.

### 3. Plaintiff States Fraud Claims Against All Defendants.

Defendants argue Plaintiff's fraud claims should be dismissed for two primary reasons. (Doc. No. 6-1 at 24-25.) The Court will address each in turn.

First, Defendants say that "a party cannot allege a fraud claim arising from the same conduct that supports a breach of contract claim unless the fraud claim stems from a separate independent duty unrelated to the parties' contractual obligations." (Doc. No. 12 at 15 (citing *Solid Gold Jewelers v. ADT Sec. Systems. Inc.*, 600 F. Supp. 2d 956 (N.D. Ohio 2007))). They say they owed no separate duty to Plaintiff in this case.

The Court disagrees. As Plaintiff points out, "[t]he common-law duty not to deceive a party into entering the contract or agreement is . . . independent and separate from a duty not to breach a contractual obligation." (Doc. No. 10 at 30 (quoting *King v. Hertz Corp.*, No. 1:09 CV 2674, 2011 WL 1297266, at *3 (N.D. Ohio Mar. 31, 2011))).

Second, Defendants say that "there must be damages attributable to the wrongful acts which are in addition to those attributable to the breach of contract," and Plaintiff alleged no such damages here. (Doc. No. 6-1 at 24-25 (citing *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 684 N.E.2d 1261, 1271 (1996))).

The Court agrees with Defendants' statement of law, but their characterization of the facts is inaccurate. In its Complaint, Plaintiff alleges damages beyond those attributable to the breach of contract. In its breach of contract claims, Plaintiff alleges only that it incurred $540,000 in actual contract damages. (Doc. No. 1-2 ¶ 25.) By contrast, in its fraud claims, Plaintiff alleges that it incurred $540,000 in contract damages as well as "incidental and consequential damages including lost profits and lost business opportunity, interests, costs, [and] attorney's fees." (Doc. No. 1-2 ¶ 33.) Thus, the Court concludes that Plaintiff has pled damages beyond those strictly attributable to the breach of contract and therefore has alleged facts sufficient to state fraud claims against Defendants.

19

Accordingly, and for all the reasons set forth above, Defendants' Motion to Dismiss Plaintiff's fraud claims as set forth in Count III of the Complaint is without merit and denied.

### III. Conclusion

Accordingly, and for all the reasons set forth above, Defendants' Motion to Dismiss (Doc. No. 6) is GRANTED IN PART and DENIED IN PART, as follows.

Defendants' Motion to Dismiss Plaintiff's claims for lack of jurisdiction is DENIED.

Defendants' Motion to Dismiss Plaintiff's breach of contract claims as set forth in Count I of the Complaint against the individual Defendants—Arman Motiwalla, Jake Shortino, Colin Davis, and John Does 1-10—is GRANTED for Plaintiff's failure to state a claim.

Defendants' Motion to Dismiss Plaintiff's unjust enrichment claims as set forth in Count II of the Complaint is DENIED.

Defendants' Motion to Dismiss Plaintiff's fraud claims as set forth in Count III of the Complaint is DENIED.

As to those claims which are dismissed, the dismissal is with prejudice because it does not appear that the claims could be saved by an amendment. *See Newberry v. Silverman*, 789 F.3d 636, 645-46 (6th Cir. 2015).

**IT IS SO ORDERED.**

                                              *s/Pamela A. Barker*
                                              PAMELA A. BARKER
Date: October 28, 2019                U. S. DISTRICT JUDGE